■ LYDIA ROSEBORO, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [729 NYS2d 472] —Judgment, Supreme Court, New York County (Paula Omansky, J.), entered August 31, 1999, which awarded plaintiff-respondent Lydia Roseboro the amount of $788,822.96 and Sandra Roseboro, her daughter, the amount of $10,401, for the personal injury and wrongful death of Leandrow Roseboro, reversed, on the law, without costs, judgment vacated, and the matter remanded for a new trial on apportionment only.

Plaintiff's decedent was struck by a subway train as it approached the 116th Street station in Manhattan. Mr. Roseboro had descended onto the tracks in an attempt to evade an assault by three men who were subjecting him to a beating. The assailants were apprehended and convicted of felony murder in connection with the attack.

In this action seeking damages for wrongful death and for personal injury, the jury found that the failure of defendant's token booth clerk to summon assistance was a substantial contributing factor to the injury and death. However, the jury found no negligence on the part of defendant's motorman. The amount awarded includes $500,000 for decedent's pain and suffering.

Defendant appeals from a ruling made at the start of trial, which granted plaintiff's motion in limine to bar apportionment pursuant to CPLR article 16. Supreme Court held that where the cause of action is simple negligence, a defendant tortfeasor is not entitled to apportionment based upon the conduct of a nonparty intentional tortfeasor.

CPLR article 16 is normally applicable in tort actions, with certain specified exceptions. It abrogates the common-law doctrine of joint and several liability by limiting an individual tortfeasor's liability for "non-economic loss" (CPLR 1600) to the extent of that tortfeasor's relative culpability (CPLR 1601). Under the statutory scheme, apportionment for non-economic loss is presumptively available to a defendant, whose only obligation is to establish that his equitable share of the total liability is no more than 50% so as to fall within the ambit of the provision (CPLR 1603).

To invoke a limitation on the applicability of CPLR article 16, a plaintiff is required to "allege and prove by a preponderance of the evidence that one or more of the exemptions" stated in CPLR 1601 (1) or 1602 applies to the action (CPLR 1603).

The necessity to "allege" a ground for exemption is construed as a pleading requirement, to be asserted in the complaint or in an amendment to the complaint. As the Court of Appeals has made clear, "a party asserting an exception to article 16 has the affirmative obligation of pleading and proving *that exception* by a preponderance of the evidence (CPLR 1603)" (*Cole v Mandell Food Stores*, 93 NY2d 34, 38-39 [emphasis added]). As the Court noted, "Implicit in this requirement is that a defendant potentially subject to the weight of a full judgment must have appropriate notice provided by pleadings" (*supra*, at 40).

The complaint in this matter alleges only in the most general manner: "That this action falls into one or more of the exceptions set forth in C.P.L.R. Article 16." At no time did plaintiff move to amend the pleadings to state the statutory basis for limiting application of the article. Only in the course of arguing her motion in limine did plaintiff indicate that the basis for asserting an exception was this Court's decision in *Pantages v L.G. Airport Hotel Assocs.* (187 AD2d 273 [CPLR 1602 (5)]; *cf., Siler v 146 Montague Assocs.*, 228 AD2d 33 [2d Dept], *appeal dismissed* 90 NY2d 927).

As the Court of Appeals noted in *Cole* (*supra*, at 39), leave to amend the pleadings is liberally granted "at various points throughout an action in order to comply with CPLR 1603"; however, plaintiff's application at the start of trial did not afford defendant sufficient "notice of such assertion so that it could prepare its defense or adjust its trial strategy. Failure to provide such notice cannot be deemed harmless" (*id.*, at 40). It is not in keeping with either the obligation to plead that "one or more of the exemptions * * * applies" (CPLR 1603) or with the language of *Cole* to permit a plaintiff to make a non-specific reference to article 16 in the complaint and then unfairly surprise the defendant with the particular exception relied upon at the commencement of trial.

Having failed to adequately plead the issue, plaintiff has waived the limitation on apportionment of non-economic injury. A new trial is required to determine the extent of the liability of the nonparty intentional tortfeasors (*Rangolan v County of Nassau*, 96 NY2d 42).

Were we to reach the merits, we would hold that Supreme Court erred in failing to deliver an apportionment charge with respect to non-economic damages. It is plaintiff's position that apportionment pursuant to CPLR article 16 is unavailable against nonparty intentional tortfeasors. However, no such exemption is provided in the statute, and the Court of Appeals

has applied the maxim *"expressio unius est exclusio alterius"* to preclude any basis for exemption not expressly mandated by the Legislature (*Morales v County of Nassau*, 94 NY2d 218, 224).

Plaintiff's assertion that CPLR article 16 precludes apportionment is without merit. CPLR 1602 provides that the limitation of a defendant's share of non-economic damages to the extent of its own culpability does "not apply to actions requiring proof of intent" (CPLR 1602 [5]). However, as Supreme Court recognized, the action prosecuted by plaintiff against the New York City Transit Authority is for negligence only. There is no suggestion that defendant's conduct was willful, and plaintiff has instituted no action against any of the assailants convicted for the felony murder of plaintiff's decedent. The exclusion, by its terms, is applicable to "actions" prosecuted against intentional tortfeasors and cannot, by implication, be extended to nonparties.

If any blanket exclusion from apportionment for the acts of nonparty assailants were recognized, it would have found obvious application under the facts of *Rangolan v County of Nassau* (*supra*). In that action, the United States District Court for the Eastern District of New York granted judgment to plaintiff as a matter of law for injuries sustained while incarcerated at the Nassau County jail at the hands of Steven King, a fellow inmate (217 F3d 77, 79). The County had actual notice that the plaintiff had given information against King to police, and plaintiff's records explicitly stated that he was to be housed apart from King (96 NY2d, *supra*, at 45). Certifying a question to the New York Court of Appeals, the Second Circuit Court of Appeals broadly posited (at 46) " 'whether a tortfeasor such as the County can, in the facts and circumstances of this case, seek to apportion its liability with another tortfeasor such as King pursuant to N. Y. C.P.L.R. 1601, or whether N. Y. C.P.L.R. 1602 (2) (iv) precludes such a defendant from seeking apportionment' " (quoting 217 F3d, *supra*, at 81). The Court of Appeals stated: "We answer the first part of the question in the affirmative, and thus [*sic*] the second part in the negative," holding that there is no statutory exclusion for a defendant whose duty is "non-delegable" (96 NY2d, *supra*, at 46; *see*, CPLR 1602 [2] [iv]).

It has been prominently noted that CPLR article 16 "was the product of a painstaking balance of interests" (*Morales, supra*, at 224), and that extension of the stated exemptions to article 16 "would. upset this careful balance struck by the Legislature" (*supra*, at 225). As the Court of Appeals stated in *Rangolan v*

*County of Nassau* (*supra*, at 48), "municipalities, landowners and employers, who often owe a non-delegable duty or are vicariously liable for their agents' actions * * * are precisely the entities that article 16 was designed to protect." Concur—Sullivan, P. J., Tom and Rubin, JJ.

Ellerin, J., dissents in a memorandum as follows: In the absence of clear legislative intent regarding the meaning and breadth of the exemption from apportionment of liability found in CPLR 1602 (5), I would adhere to our prior determinations in (*Brewster v Prince Apts.*, 264 AD2d 611, 616, *lv denied* 94 NY2d 762, *lv dismissed* 94 NY2d 875; *Pantages v L.G. Airport Hotel Assocs.*, 187 AD2d 273) and apply the rule requiring strict construction of statutes which are in derogation of common law (McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a], at 460). Accordingly, I would affirm the trial court's pre-trial ruling that defendant not be afforded a CPLR article 16 apportionment charge and, contrary to the majority's view, hold that plaintiff preserved her right to exemption from the application of article 16 from the very inception of this lawsuit.

On the morning of October 13, 1991, plaintiff's husband, Leandrow Roseboro, arrived at the platform of defendant's train station at 116th Street and 8th Avenue to await the A train which would take him to work. At the time in question, defendant Transit Authority was aware that this train station was infested with crack addicts, and defendant's token booth clerk, Joseph Hutchinson, remembered seeing Mr. Roseboro, whom he recognized as a "regular," enter the station that morning.

Shortly thereafter, Mr. Roseboro was approached by two of the addict habitues, who then attempted to rob him, during the course of which he was beaten. While this assault was taking place, Hutchinson saw, on the three television monitors located in the front of his token booth, a disturbance but took no affirmative action. Hutchinson admitted at trial that he was dozing on and off at the time.

Another resident drug user, Rochelle White, testified that the assault of Mr. Roseboro lasted more than five minutes, during which time the victim was brutally beaten, and that he eventually fell to the tracks while attempting to get away. However, the assailants pursued Mr. Roseboro onto the tracks, continuing to beat him by slamming his head against a beam which separated the local and express tracks, while rifling his pockets. At this time, a train entered the station. The assailants jumped up on the platform; Mr. Roseboro, however, bloodied and staggering, could not avoid the oncoming train and died shortly after impact.

The assailants were eventually captured and convicted of murder in the second degree.

The jury returned a verdict finding that defendant Transit Authority breached a duty of reasonable care owed to Mr. Roseboro based on Hutchinson's conduct and awarded damages totaling some $800,000, including $500,000 for non-economic loss. The majority would now affirm the liability portion of the judgment but would remand for a new trial on apportionment fault between the Transit Authority and the assailants because the plaintiff failed to preserve her claim to exemption from the application of CPLR article 16 and because, in any event, no exemption to defendant's right to apportionment exists under the facts herein. For the following reasons, I respectfully disagree and would affirm the judgment in toto.

Plaintiff's complaint specifically pleads, as required by CPLR 1603, that the action is exempt from CPLR article 16 application. The sole purpose of the requirement to plead exemption is to place the defendant on notice that it is "potentially subject to the weight of a full judgment" (*Cole v Mandell Food Stores*, 93 NY2d 34, 40). Contrary to the majority, there is no requirement in the statute or case law mandating the plaintiff to plead the precise exemption relied upon in her complaint. If the defendant is unsure, it may always seek amplification by serving a bill of particulars requesting the particular exemption relied upon. This defendant did not do.

Additionally, the issue of defendant's right to apportionment was addressed via a motion in limine and denied prior to trial based on the exemption found in CPLR 1602 (5), and this Court's prior decisions (*Brewster, supra*; *Pantages, supra*). Defendant Transit Authority is thus hardly in a position to claim surprise or prejudice.

The majority would ignore or overrule our prior holdings in light of *Morales v County of Nassau* (94 NY2d 218) and *Rangolan v County of Nassau* (96 NY2d 42). But neither *Morales* nor *Rangolan* considered the exemption found in CPLR 1602 (5)— "actions requiring proof of intent." In *Morales*, the plaintiff utterly failed to plead exemption from article 16 application and only raised a general public policy argument against such application on appeal. The Court of Appeals held that only those exemptions specifically set forth in CPLR 1602 may be considered in determining article 16's application and public policy was not a listed exemption. Notably, however, the Court did recognize that the trial court and Appellate Division could consider even unpled exemptions in the exercise of discretion and in the absence of prejudice (94 NY2d at 223). Contrary to

the majority's intimation, plaintiff does not rely here on public policy, but, rather, on the exemption set forth in CPLR 1602 (5).

I agree with the analysis set forth by my colleague, Justice Saxe, in his opinion in *Chianese v Meier* (285 AD2d 315 [decided herewith]). *Rangolan* did not consider the exemption relied upon herein—CPLR 1602 (5) "actions requiring proof of intent." *Rangolan* merely held that CPLR 1602 (2) (iv) does not preclude apportionment where a defendant's liability arises from breach of a non-delegable duty, specifically finding this subdivision to be a savings clause intended to preserve principles of vicarious liability. Significantly, the plaintiff in *Rangolan* did not assert CPLR 1602 (5) as a bar to apportionment. The plaintiff here does.

In addition to the cogent reasoning of Justice Saxe set forth in *Chianese*, allowing for the application of the exemption at issue here to cases where a negligent tortfeasor seeks apportionment from an intentional wrongdoer, I would add the following. A primary purpose underlying the imposition of liability against premises owners who fail to take reasonable precaution to protect those lawfully on their property is to ensure full and just recompense for the injured party as well as compel premises owners to provide proper security. This Court's previous decisions serve to deter the negligent tortfeasor from failing to act where such inaction creates the risk of a foreseeable intentional tort by preserving traditional joint and several liability (*see,* Kreindler, Rodriguez, Beekman & Cook, New York Law of Torts § 10.11, 2001 Supp, at 77-78). To allow negligent premises owners to transfer some of their responsibility to the very persons they are legally required to protect a plaintiff from would in effect undermine the rationale for the duty owed by a landowner to provide reasonable security (*see, Burgos v Aqueduct Realty*, 92 NY2d 544).

There is, of course, great societal concern that those who commit criminal acts be apprehended and prosecuted. Yet, if such persons are not apprehended, a negligent premises owner will not be afforded CPLR article 16 consideration since a nonparty's liability may not be considered if the plaintiff proves that with due diligence jurisdiction over such nonparty could not be obtained (CPLR 1601). Ironically, under the majority's interpretation, a blameless victim, who cooperates in the vigorous prosecution of a criminal action where the perpetrator is apprehended, would be penalized by reduction of just compensation for the injuries suffered. This anomaly does not arise, however, if the exemption in CPLR 1602 (5) is given its intended effect.

I am not unmindful that the general purpose of article 16's enactment was "to remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (*Rangolan, supra* at 46). However, the Legislature also sought an equitable balance by enacting specific exemptions to its application, including CPLR 1602 (5).

The Legislature's use of different terms in its delineation of the various exemptions makes clear that the Legislature did not intend that an assault victim whose injuries were foreseeable and proximately caused by the actions or inaction of a premises owner should be deprived of her common-law right to joint and several liability based solely on the fortuitous and capricious circumstance of her assailant's capture. Subdivision (11) of CPLR 1602 specifically provides that article 16 shall "not apply to any *parties* found to have acted knowingly or intentionally, and in concert." (Emphasis added.) Subdivision (5), relied upon by plaintiff here, provides that article 16 shall "not apply to *actions* requiring proof of intent." (Emphasis added.) Had the Legislature intended subdivision (5) to apply only to a party whose liability is based on intentional actions, it would have employed the same or similar language as that found in subdivision (11) to express that intent. "[W]here, as here, the Legislature uses different terms in various parts of a statute, courts may reasonably infer that different concepts are intended" (*Rangolan, supra* at 47).

Accordingly, in the absence of clear legislative intent regarding the right to article 16 apportionment between a negligent and intentional tortfeasor, and consistent with the rule of statutory construction requiring strict interpretation of statutes which are in derogation of the common law, I would hold that the exemption found in CPLR 1602 (5) precludes apportionment between a negligent and intentional tortfeasor and would not allow the general purpose of CPLR article 16 to override the exemption or ignore all other considerations. Concur—Sullivan, P. J., Tom and Rubin, JJ.